PEOPLE v SANDERS

1. JURY—JURY SELECTION—JURORS—VOTER REGISTRATION LISTS—
   STATUTES.

   Selection of persons to be named to serve as jurors shall be taken
   from current voter registration lists (MCLA 600.1304).

2. JURY—JURY SELECTION—JURORS—REPRESENTATION OF COMMUNITY
   —MINORITY REPRESENTATION—PURPOSEFUL DISCRIMINATION.

   A jury need not represent proportionally a cross-section of the
   community; the law only requires that the panel not be pur-
   posely unrepresentative; those finally chosen may have no
   minority representation as a result of the operation of chance,
   challenges for cause, and peremptory challenges; purposeful
   discrimination may not be merely assumed or asserted, it must
   be proven.

3. CRIMINAL LAW—SENTENCING—CONSECUTIVE SENTENCES—FELONY
   CONVICTIONS—SUBSEQUENT CONVICTIONS—STATUTES.

   When a person, who has been charged with a felony and pending
   the disposition of the charge, commits a subsequent offense
   which is a felony, upon conviction or acceptance of a guilty plea
   of the subsequent offense, the sentences imposed for conviction
   of the prior charged offense and any subsequent offense, may
   run consecutively (MCLA 768.7b).

4. CRIMINAL LAW—SENTENCING—CONSECUTIVE SENTENCES—JURY—
   VERDICTS—ACCEPTANCE OF VERDICT—POLLING OF JURY—STAT-
   UTES.

   The disposition of a criminal case is still pending where the
   polling of the jury has not been completed and the verdict has
   not been accepted by the trial judge; therefore, a defendant in a
   trial for felonious assault, who threw his chair at the judge
   during the polling of the jury and before the verdict was

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 47 Am Jur 2d, Jury § 136 *et seq.*
[3] 21 Am Jur 2d, Criminal Law § 585.
[4] 21 Am Jur 2d, Criminal Law § 370.
    76 Am Jur 2d, Trial § 1123.

accepted, may be given consecutive sentences for two offenses of felonious assault where the defendant was found guilty at the first trial and at a subsequent trial for throwing the chair (MCLA 768.7b).

Appeal from Oakland, John N. O'Brien, J. Submitted Division 2 December 3, 1974, at Lansing. (Docket No. 19057.) Decided February 12, 1975.

Charles E. Sanders was convicted of felonious assault and given a sentence to run consecutively after another sentence imposed for a separate offense. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel, for the people.

*Campbell, Lee, Kurzman & Leitman* (by *Thomas G. Plunkett),* for defendant.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and VAN VALKENBURG,* JJ.

D. E. HOLBROOK, P. J. On September 28, 1973, defendant Charles E. Sanders was found guilty by a jury of felonious assault, MCLA 750.82; MSA 28.277, in Oakland County Circuit Court. On October 18, 1973, defendant was sentenced to a term of from two to four years to run consecutively after the sentence imposed on May 31, 1973, pursuant to MCLA 768.7b; MSA 28.1030(2).

The basis for this offense arose during the final day of the first trial, Friday, May 4, 1973. The jury had come in with a verdict of guilty of felonious assault. During the polling of the jury, at the

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

request of defendant and before the verdict was accepted, the defendant grabbed the chair that he was sitting on and threw it at the bench. The judge saw the chair coming, moved and avoided being hit.

At the time of trial in the instant case, counsel for defendant challenged the jury array based upon its racial makeup and selection process, as defendant was black and the entire jury was white. Defendant also claims that his last sentence, which was made to run consecutively after the first sentence, was improper.

## I

Outside the hearing of the jury, defense counsel challenged the jury array as follows:

"My challenge goes simply to this process. I don't believe, in view of the number of blacks there are in the county, the County of Oakland, and the fact that there were no blacks at all on the panel, that this represents a cross section of the community. It seems to me that the panel itself, should have a number of blacks, in percentage as the number of blacks that would be in Oakland County itself.

"For this reason, I challenge the array of the jury."

MCLA 600.1304; MSA 27A.1304 provides that selection of persons to be named to serve as jurors shall be taken from current voter registration lists. The use of this method of selecting jurors has been approved by this Court. *People v Gray,* 45 Mich App 643, 645; 207 NW2d 161, 163 (1973), *aff'd,* 393 Mich 1; 222 NW2d 515 (1974), citing *People v Robinson,* 41 Mich App 259, 263; 199 NW2d 878, 880 (1972). The same assertion as made herein was made in *People v Bell Williams,* 50

Mich App 763, 767–768; 213 NW2d 754, 755–756 (1973). Therein this writer wrote in part:

"Purposeful discrimination may not be merely assumed or asserted. It must be proven. Unlike the defendant in *Robson v Grand Trunk W R Co,* 5 Mich App 90; 145 NW2d 846 (1966), the defendant has not met that burden here.

\* \* \*

"In the use of voter lists that is challenged here, the state has done nothing to affirmatively tailor the rolls to exclude blacks. The jury array is drawn by random selection from voter registration lists submitted by the several political subdivisions of Oakland County. No showing is made that court officers in any way failed or refused to make use of the lists covering the Pontiac ghetto in selecting potential jurors. Defendant's contention is simply a claim that the array from which his panel was chosen had to include a percentage of blacks equal to their percentage of Pontiac's population. That is not a tenable position."[1]

See also *People v Tunstull,* 54 Mich App 254; 220 NW2d 703 (1974). Likewise, in the present case, the defendant has not made a showing of systematic, intentional exclusion of blacks from juries in Oakland County by the means of selecting names from jury lists, which is required by the statute.

In his partial dissent in *Carter v Jury Commission of Greene County,* 396 US 320, 343; 90 S Ct 518; 24 L Ed 2d 549, 565 (1970), Mr. Justice DOUGLAS wrote:

"We have often said that no jury need represent proportionally a cross-section of the community. See

---

[1] In *Robson v Grand Trunk W R Co,* 5 Mich App 90; 145 NW2d 846 (1966), this Court found that the method used in selecting a jury list was illegal as not in conformity with the applicable statutory provisions. There is no assertion in this case that the method used was other than that specified by statute MCLA 600.1304; MSA 27A.1304.

*Swain v Alabama,* 380 US 202, 208–209; 85 S Ct 824; 13 L Ed 2d 759, 766 (1965); *Cassell v Texas,* 339 US 282, 286–287; 70 S Ct 629; 94 L Ed 839, 846–847 (1950). Jury selection is largely by chance; and no matter what the race of the defendant, he bears the risk that no racial component, presumably favorable to him, will appear on the jury that tries him. The law only requires that the panel not be purposely unrepresentative. See *Whitus v Georgia,* 385 US 545, 550; 87 S Ct 643; 17 L Ed 2d 599, 603 (1967). Those finally chosen may have no minority representation as a result of the operation of chance, challenges for cause, and peremptory challenges." (Fn omitted.)

The mere fact that no black persons were on the jury which passed upon defendant's case does not rise to the level of showing discrimination.

## II

Defendant asserts that his sentence should not have read to run consecutively.

MCLA 768.7b; MSA 28.1030(2) provides:

"When a person, who has been charged with a felony and *pending the disposition of the charge,* commits a subsequent offense which is a felony, upon conviction or acceptance of a guilty plea of the subsequent offense, the sentences imposed for conviction of the prior charged offense and any subsequent offense, may run consecutively." 1927 PA 175, c VIII, § 7b, added by 1971 PA 180, § 1, eff March 30, 1972. (Emphasis supplied.)

Defendant here asserts that his case had been disposed of as a verdict had been rendered and relies upon *People v Bonner,* 49 Mich App 153, 158; 211 NW2d 542, 545 (1973). In pertinent part Judge Gillis therein wrote:

"Defendant concedes that the Legislature may differ-

entiate, as it has by the above statute, two classes of persons; those who have committed subsequent felonies while on bond and those who have not, and provide for different punishments between those classes. We think that is a wise concession. The purpose of the statute is to deter persons accused of one crime from committing others by removing the security of concurrent sentences should conviction result on any or all of the crimes so committed. Such a purpose is laudable, rational and the statute reasonably tends to achieve that purpose. See *Naudzius v Lahr,* 253 Mich 216; 234 NW 581 (1931).

"Rather, defendant's concern is that all persons subject to consecutive sentencing are not treated alike. The statute is permissive; a sentence imposed on the bonded offender 'may run consecutively'. The essence of defendant's theory is that if judicial discretion is the sole determinant, inequity will result. We disagree. The exercise of sound judicial discretion is contemplated in our law in the imposition of *any* sentence. We decline to interfere by interposing artificial standards not correlated to the concept of individualized justice implicit in the exercise of discretion by the sentencing judge. *Cf. People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972)." (Emphasis in original.)

We find that *Bonner* does not limit the use of the statute to those persons who commit subsequent felonies while on bond, but covers persons who commit a felony pending the disposition of a prior felony charge, including the present situation. Black's Law Dictionary refers to pending as "Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment." It is obvious, as the polling of the jury had not been completed and the verdict had not been accepted by the trial judge, the case was still pending. It is true: "Consecutive sentences are rarely appropriate. Authority to impose a consecutive sentence should be circumscribed by * * *

statutory limitations."[2] *Cf. Browning v Michigan Department of Corrections,* 385 Mich 179; 188 NW2d 552 (1971), citing *In re Carey,* 372 Mich 378; 126 NW2d 727 (1964). The subject two convictions present an appropriate situation for consecutive sentencing as they fall within the express terms of the statute.

Affirmed.

---

[2] ABA Standards Relating to the Administration of Criminal Justice, Sentencing Alternatives and Procedures, § 3.4(b), (1968).