# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT MICHAEL AVENDT,

        Defendant-Appellant.

UNPUBLISHED
October 31, 2017

No. 332538
Oakland Circuit Court
LC No. 2015-255744-FC

---

Before: BECKERING, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of three counts of criminal sexual conduct ("CSC") in the first degree (victim under 13), MCL 750.520b(2)(b). The trial court sentenced him as a fourth habitual offender, MCL 769.12, to life in prison without the possibility of parole. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

Defendant was charged with repeated sexual assaults against the daughter of his live-in girlfriend over a period of years. The complaining witness, CK, testified that the sexual assaults began when she was seven years old and continued until she reported the abuse when she was 14 years old. The assaults included vaginal penile and digital penetration and fellatio.[1] CK's mother, JK, suffered from a variety of physical ailments that made it difficult for her to climb stairs. CK testified that about once per week defendant would come to her second-story bedroom. After turning the shower on in the bathroom next door, and with the rest of the household in bed for the night, he would assault CK, then shower, and return downstairs to her mother.

After approximately seven years, CK disclosed the abuse to a friend, asking the friend not to tell anyone. About six months later, the friend told a school counselor, who contacted JK. The police were notified, and upon investigation, defendant was arrested, tried, and found guilty. Because he was a habitual offender, defendant was sentenced to life without parole.

---

[1] CK also testified that, on several occasions, defendant forced anal intercourse on her.

Defendant's appellate attorney raises two issues on appeal: that he was denied a fair trial because certain other acts evidence was admitted and that he was denied the effective assistance of counsel. Defendant raises an additional nine issues in propria persona in a Standard 4 Brief.[2]

## II. OTHER ACTS EVIDENCE

## A. STANDARD OF REVIEW

Defendant first argues that he was denied a fair trial because the trial court failed to conduct an analysis under MRE 403 to ensure that the other acts evidence that plaintiff moved to introduce was not more prejudicial than probative. He further argues that it was unfairly prejudicial to allow documentary evidence of his prior conviction instead of live testimony. Preliminary questions of law concerning the admissibility of evidence are reviewed de novo. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "We review the trial court's ultimate decision regarding admissibility of evidence for an abuse of discretion. An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes." *Id*.

## B. ANALYSIS

On November 23, 2015, plaintiff moved under MCL 768.27a to introduce other acts evidence concerning, in part, evidence of sexual assaults against two other minors, CS and LH. The only other acts evidence actually admitted at trial was a certified copy of defendant's conviction of first-degree CSC against LH. Because defendant first argues that the trial court abused its discretion in ruling that *any* other acts evidence could be admitted, we briefly summarize the allegations regarding both LH and CS.

In 1991, CS was the 13-year-old sister of defendant's then wife. CS reported to the police that defendant had kissed her and penetrated her vagina with his fingers one night after his wife fell asleep. These allegations did not result in charges against defendant. In 1999, when LH was twelve years old, her parents were friends with defendant and his then wife. One night, the families got together at the friends' house to watch a movie. The two women left the house together, and LH's stepfather fell asleep in his bedroom. Defendant began to tickle LH, then put his hand down her pants and inserted his fingers into her vagina and anus and rubbed her breasts. After she went to her bedroom and lay down beside defendant's older daughter, SA, defendant exposed his penis to LH and asked if she were having her period. He again tried to put his hand down her pants, but he stopped when she traded places with SA. These acts resulted in defendant's 2002 conviction for two counts of first-degree CSC.

At the hearing on plaintiff's motion to allow this evidence, defense counsel admitted that evidence regarding LH was admissible, but argued that it was nonetheless unfairly prejudicial because it would show propensity and because it had happened so long ago. The trial court decided to allow the evidence because there was a conviction and the circumstances were similar. But the trial court agreed with defense counsel that plaintiff should not be allowed to

---

[2] See Supreme Court Administrative Order No. 2004-6, 471 Mich c, (2004).

introduce evidence of defendant's conviction. The court instructed the prosecution to inform its other acts witnesses that they were not to mention the previous trial or conviction. The court also stated that it would provide the appropriate limiting instructions to the jury. The written order, issued the same day, contained no language excluding evidence of the previous trial or conviction. It stated that "the People's motion is granted"[3] and included the court's statement that the judge would give the limiting instruction regarding prior acts and allegations.

Normally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). But the Michigan Legislature has established an exception to this rule in MCL 768.27a with respect to certain listed offenses[4] when a defendant is accused of a similar offense against a minor. *People v Watkins*, 491 Mich 450, 470-471; 818 NW2d 296 (2012). "[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Watkins*, 491 Mich at 470, quoting MRE 401. While MRE 404(b) generally excludes character evidence that only shows a propensity to commit the charged offense, MCL 768.27a permits the admission of such evidence regarding a listed offenses because it makes it more probable that the defendant committed the charged offense. See *Watkins*, 491 Mich at 468-470.

Even when other acts evidence is proffered under MCL 768.27a, however, the trial court "must still employ the balancing test of MRE 403." *People v Brown*, 294 Mich App 377, 386; 811 NW2d 531 (2011). As a balancing test, "MRE 403 involves two sides of a scale—a probative side and a prejudicial side." *Watkins*, 491 Mich at 486. "Propensity evidence is prejudicial by nature," which is why it is normally precluded under MRE 404(b). *Id*. Therefore, in order to effectuate the policy underlying MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487. "[E]vidence admissible under MCL 768.27a may not be excluded . . . as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. The Court in *Watkins*, 491 Mich at 487-488, listed nonexhaustive factors to consider regarding MRE 403 in this context:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the

---

[3] The relief that plaintiff had sought in its motion was for the court "to admit Defendant's other listed offenses," which we summarized above.

[4] A "[l]isted offense" is any of the offenses "defined in section 2 of the sex offenders registration act, . . . MCL 28.722." MCL 768.27a(2)(a). "'Minor' means an individual less than 18 years of age." MCL 768.27a(2)(b). First degree CSC, victim under 13, is a listed offense, and LH was 12 years old at the time of the assault for which defendant was convicted in 2002.

evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

The trial court clearly conducted the balancing test in this case. First, the court correctly stated that evidence could not be excluded in cases of sexual assault against children under 13 simply because it showed propensity. See *Watkins*, 491 Mich at 486. The trial court then considered several of the *Watkins* factors, including the reliability of the other acts evidence and dissimilarity between the other acts and the charged offenses. The court also considered the temporal proximity factor when the defense counsel argued that the 1999 acts against LH were too remote in time. The court impliedly acknowledged that this factor might weigh on the side of its prejudicial effect, but correctly stated that this Court has held that this is not a significant factor. Indeed, "MCL 768.27a does not contain a temporal limitation. The remoteness of the other act affects the weight of the evidence rather than its admissibility." *Brown*, 294 Mich App at 387.

We find no merit in defendant's argument that the trial court did not apply the balancing test in MRE 403. The court responded to defense counsel's arguments regarding the prejudicial nature of the evidence and also considered at least two of the other *Watkins* factors. All but one factor weighed strongly on the probative side of the scale, and the one that did not (temporal proximity) was not, by itself, enough to tip the scale toward exclusion. The trial court's decision was not an abuse of discretion because it was well within the range of principled outcomes.

At trial, neither CS nor LH testified. Before the trial began, the prosecutor informed the judge that she had tendered to defense counsel a certified copy of defendant's prior conviction for first degree CSC against LH, but she had redacted both any reference to defendant's being sent to the Department of Corrections and the sentence imposed. Defense counsel indicated that this was acceptable to him. The certified copy of defendant's 2002 conviction was admitted into evidence later that day without objection. Defendant now argues that there was no legitimate reason to allow the documentary evidence of his prior conviction and that it was unfairly prejudicial because he was not able to use cross-examination of a live witness to mitigate its effect. We disagree.

Pursuant to MCL 768.27a, allowing other acts to bolster a child victim's credibility is a legitimate purpose in a sexual assault case. See *Watkins*, 491 Mich at 491. It was not unfairly prejudicial in this case. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). Evidence that establishes propensity cannot be called marginally probative. Here, the evidence of defendant's prior convictions for sexually assaulting another child bolstered the complainant's credibility, which defense counsel tried to impugn by eliciting testimony that she did not like defendant and wanted him to leave, that defendant could not have assaulted her during a particular year because he was in jail, and that even though her mother and others had told her to tell them if anyone touched her inappropriately, she did not report defendant's sexual assaults for seven years.

Additionally, there is nothing inherently unfair about allowing documentary evidence of a conviction. See *Duenaz*, 306 Mich App at 101. The defendant in *Duenaz* was tried for first degree CSC against a victim who was eight years old at the time of the offenses. *Id*. at 89, 93.

The trial court admitted as evidence a certified copy of the defendant's conviction for attempted molestation of a child in another state. *Id*. at 101. As in the case at bar, the details of the prior conviction were not presented, but the two offenses both involved sex crimes against children. *Id*. This Court held that while this evidence was prejudicial, it was not unfairly so, and the trial court's admission of this evidence was not an abuse of the court's discretion even though the jury could not compare the details of the two crimes. *Id*.

Defendant next argues that the admission of the certificate of conviction was erroneous because the trial court had stated at the hearing that evidence of the previous trial and conviction would not be allowed. Again, we disagree. First, "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Thus, the trial court's written order supercedes any variance with the court's oral pronouncement. See *City of Sterling Heights v Chrysler Group, LLC*, 309 Mich App 676, 682; 873 NW2d 342 (2015) (holding that the court's written order controlled even though it did not include statements made at a hearing).

In this case, the order was issued the day of the hearing. Under the circumstances, it seems unlikely that the court simply forgot to include the language precluding testimony about trial and convictions, especially because the court remembered to include its statement about jury instructions. But even if the omission were unintentional, the written order still controls. See *People v Hill*, 69 Mich App 41, 42-43; 244 NW2d 357 (1976) ("[w]hether by neglect, inadvertence or oversight" a probation condition mentioned at the hearing was not included in the order, and therefore it was not a condition of the defendant's probation).

Contrary to defendant's argument, the trial court properly considered whether evidence of defendant's prior conviction should be excluded under the balancing test of MRE 403 and did not abuse its discretion finding that its probative value was not substantially outweighed by the danger of unfair prejudice. *Watkins*, 491 Mich at 487-488. Further, the jury was properly instructed. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Defendant argues that he received ineffective assistance of counsel; this issue presents a mixed question of fact and constitutional law. The trial court's findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). When this claim is unpreserved, as it was here, the review is limited to mistakes that are apparent from the record. *Id*.

### B. ANALYSIS

While a criminal defendant has a fundamental right to effective assistance of counsel, the burden is on the defendant to prove that he did not receive effective assistance from his counsel. *Id*. To prevail on this claim, a defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a

-5-

reasonable probability that but for defense counsel's errors the result of the proceeding would have been different. *Id.* at 80-81.

Defendant first argues that his counsel should have objected when plaintiff moved to admit the certified copy of his prior conviction because the trial court had stated at the motion hearing that evidence of the conviction itself would not be allowed. We disagree.

Because the court's written order controls and it contains no limitation on the type of evidence that could be used to establish that defendant also sexually assaulted LH, defense counsel made no error by not objecting to the evidence. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Erickson*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that his attorney erred by eliciting testimony from CK about the time defendant spent in jail for failing to register as a sex offender. A defendant must overcome a strong presumption that his counsel's actions and inactions were sound trial strategy. *Heft*, 299 Mich App at 83. Decisions regarding what evidence to present are presumed to be matters of trial strategy. See *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001).

It is clear from the record that defense counsel was attempting to impeach CK's testimony, which established unequivocally that defendant began molesting her sometime in 2008, and did so at least weekly until she disclosed the abuse over six years later. On cross examination, defense counsel asked how it was possible for defendant to have sexually assaulted her weekly from April 2008 through May 2009 when he was in the Oakland County jail for violating his sex registry obligations. The defense counsel's decision to introduce this evidence in an attempt to damage the complaining witness's credibility was strategic. "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). This Court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Id.* at 411. Defendant has not overcome the presumption that defense counsel's decision was sound trial strategy. *Heft*, 299 Mich App at 83.

## IV. STANDARD 4 BRIEF

In his Standard 4 brief, defendant asserts that nine additional issues warrant relief.

### A. JURY

First, defendant argues that the jury did not represent a fair cross section of the community and was biased based on gender, age, race, and relationship to members of law enforcement. Defendant has not established any of these claims.

There are three elements that a defendant must prove to establish a prima facie case that his jury was not fairly drawn from a cross-section of the community. They are:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in

the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*People v Bryant*, 491 Mich 575, 581-582; 822 NW2d 124 (2012), quoting *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).]

Defendant cannot demonstrate the second element because no factual record was created regarding the numbers of any of the groups he cites, as there would have been had he objected below. Additionally, the record does not reveal the exact composition of the jury. Consequently, defendant cannot establish his fair cross-section claim. See *People v Taylor*, 275 Mich App 177, 184-185; 737 NW2d 790 (2007).

Additionally, the requirement for jurors to be drawn from a fair cross-section of the community does not mean that each jury must proportionally represent a cross section of the community. *People v Sanders*, 58 Mich App 512, 515-516; 228 NW2d 439 (1975), citing *Carter v Jury Comm of Green Co*, 396 US 320, 343; 90 S Ct 518; 24 L Ed 2d 549 (1970), Douglas, J, partially dissenting. In *Sanders*, the defendant was African American, and the jury was composed entirely of Caucasians. *Sanders*, 58 Mich App at 514. This Court held that "[t]he mere fact that no black persons were on the jury which passed upon defendant's case does not rise to the level of showing discrimination." *Id*. at 514. This conclusion applies to the present case, not only to defendant's complaint that there were no African Americans on his jury, but also to his unsupported statement that most jurors were over 50, female, and members of law enforcement or their relatives. Defendant's race and age complaints have even less merit than the defendant's unsupported claim in *Sanders* that his jury was not fairly drawn because defendant's jury was all white; defendant is himself white, and he is over 50. Because there is no evidence with which to prove plain error regarding jury selection, defendant's claim that his jury was not fairly drawn from a cross-section of the community is forfeited. See *People v Jackson (On Reconsideration)*, 313 Mich App 409, 429-430; 884 NW2d 297 (2015).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues in his Standard 4 brief that his counsel was ineffective because he failed to conduct a meaningful voir dire; he failed to properly investigate the case; he called no lay or expert witnesses; he did not allow defendant to testify; he forgot that he had presented a witness list to the court; he failed to present evidence ahead of time, and it was not admitted on that basis, and he rushed the trial. Defendant further argues that the cumulative effect of these errors was to deny him a fair trial.

Defendant has failed to prove that his counsel was ineffective based on any of these arguments. As noted previously, the burden is on the defendant to prove that he did not receive effective assistance from his counsel. *Heft*, 299 Mich App at 80. In order to prevail on this claim, "a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation prejudiced him so as to deprive him of a fair trial." *Garza*, 246 Mich App at 255.

This Court has been disinclined to base a finding of ineffective counsel on jury selection. *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). This is in part because "a potential juror's facial expressions, body language, and manner of answering questions" is

crucial to an attorney's decision-making process; and an appellate court has no access to such information. *Id.* Jury selection is generally a matter of trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001).

Defendant alleges that his attorney refused to exercise peremptory challenges based on defendant's preference and failed to allow defendant to conduct a meaningful voir dire.[5] There is, however, no evidence in the record that defendant requested counsel to excuse any juror through a peremptory challenge. From our review of the record, we find that the voir dire process was sufficiently thorough to expose juror bias, and we find no evidence of juror bias.

Defendant also claims that his counsel failed to investigate, present a defense, or call a certain witness. "Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). But to obtain relief, defendant must prove the factual predicate of his claim of ineffective assistance of counsel claim. *People v Bass*, 317 Mich App 241, 276; 893 NW2d 140 (2016).

Defendant fails to cite any record evidence that he told his attorney about any witness or any other matter that required investigation, or that his defense counsel failed to investigate in any way. Nor does he explain how or why his attorney's failure to investigate deprived him of a defense or why it is probable that the alleged failure affected the outcome of his trial. For these reasons, defendant has not established error warranting relief. *Heft*, 299 Mich App at 80-81.

Defendant also alleges that his attorney failed to call lay witnesses. The decision whether or not to call witnesses is presumptively a matter of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). The failure to call a witness can be considered ineffective assistance of counsel, but only if it deprived a defendant of a defense that may have changed the outcome of the trial. *Id.* Defendant failed to establish what witnesses his counsel should have called, and has not explained what testimony such witnesses may have provided that would have given defendant a defense that could have changed the trial's outcome. He has failed to overcome the presumption that the decision to call no witnesses was sound trial strategy.

Defendant also alleges that counsel failed to obtain an expert in identification of text messages and photos. The decision of whether or not to retain an expert witness is a strategic one. *Bass*, 317 Mich App at 279. There is a strong presumption that an attorney's decision in this regard was "both strategic and effective." *Id.* Defendant provided no information or explanation about this claim, and thus has again failed to provide the necessary factual predicate to support this claim. See *id.*

Defendant further alleges that his counsel was ineffective because counsel did not permit him to testify. This claim is meritless. Criminal defendants have a due process right to testify at their trials. *People v Simmons*, 140 Mich App 681, 684; 364 NW2d 783 (1985). But a defendant waives this right if he or she "decides not to testify or acquiesces in his attorney's decision that

_____

[5] Defendant's Standard 4 brief contains nothing else on this topic except his handwritten notes on the voir dire process, with references to transcript page numbers.

he not testify[.]" *Id*. at 685 (citation omitted). If, on the other hand, a defendant expresses a desire to testify to the court, the request must be granted, even if defense counsel objects. *Id*.

In this case, there is no evidence that defense counsel prevented defendant, against defendant's will, from testifying on his own behalf. Certainly defendant knew he had a right to testify; defense counsel informed the trial court on the first day of trial that he was unsure whether defendant would testify, stating, "we haven't made that decision." Additionally, defendant admitted at the sentencing hearing that his lawyer "recommended" that he not testify. He also could have informed the court that he wished to testify against his counsel's advice, but he did not. Thus, the record shows that at a minimum, defendant acquiesced in his attorney's decision and thereby waived his constitutional right to testify. *Simmons*, 140 Mich App at 685.

Defendant alleges that his counsel was ineffective for several other reasons—he allegedly forgot that he had submitted a witness list; he introduced evidence too late, and he rushed the trial. None of these allegations has merit.

The portions of the record that defendant cites do not establish that defense counsel forgot he had submitted a witness list or "didn't know about a witness list." Counsel stated that he was not going to call defendant's daughter, not that she was not on the witness list. Defendant failed to establish a factual predicate for his claim that his counsel forgot he had submitted a witness list. *Bass*, 317 Mich App at 279. Even if the record supported this allegation, defendant has not established that such a memory lapse falls below an objective standard of reasonableness, nor even argued that this somehow prejudiced his case. *Garza*, 246 Mich App at 255. Defendant has failed to show any error on his counsel's part regarding the witness list.

Defendant claims that defense counsel submitted evidence too late, but defendant provided no reference to the record. Defendant is probably referring to an exchange on the first day of trial in which defense counsel showed the judge what were apparently pictures of CH and texts she had written. The judge told counsel they would not be admitted because no foundation could be established and the prosecutor had not seen them before that day. Defense counsel explained that he had received the documents just the day before from defendant's daughter. Defendant makes no argument regarding how this fell below an objective standard of reasonableness or how it prejudiced his case and provided no showing that his trial was fundamentally unfair. See *Garza*, 246 Mich App at 255. This allegation fails.

For his claim that his counsel rushed the trial, defendant cited a statement by defense counsel that "I think if we push it, we can get done by tomorrow," to which the trial court responded, "Well, don't push it." Defendant also cited to the transcript of the second day of trial, in which the prosecutor moved to have a witness qualified as an expert in forensic biology, and defense counsel responded, "I have known Ms. Summers before and to save 10 minutes, I will stipulate to her qualifications." Again, defendant failed to establish that these comments were unreasonable, prejudiced his case, or made the trial fundamentally unfair. This claim also fails.

Defendant claims that the cumulative effect of the alleged errors deprived him of his due process rights. This claim also fails. The cumulative effect of numerous minor errors might warrant reversal where the individual errors would not. *Unger*, 278 Mich App at 258. But where the reviewing court finds no individual errors, there can be no cumulative effect to warrant

relief. *Id*. In this case, defendant has failed to establish that his counsel's performance in any way fell below an objective standard of reasonableness. Because there were no specific errors there is no cumulative effect. Defendant's claim of ineffective assistance of counsel fails.

### C. UNREASONABLE SEARCH OF HOME

Defendant argues that his constitutional rights were violated in other ways, beginning at the district court level. His home was searched without a warrant or his consent. Defendant contends that while his girlfriend, Jennifer Knotts, may have consented, it was not her house, it was his.

Defendant's live-in girlfriend had the authority to consent to the search of his home because she had common authority. His Fourth Amendment claim is meritless.

Claims of unreasonable search and seizure can be preserved by the filing of a suppression motion before trial, or at trial if the trial court so exercises its discretion. *People v Gentner, Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004), quoting *People v Carroll*, 396 Mich 408, 411-412; 240 NW2d 722 (1976) (internal citation omitted). A suppression motion allows the trial court to consider the issue and fine tune the facts for later review. *Gentner*, 262 Mich App at 368. Where there has been no suppression motion, and the defendant did not object to admission of the evidence, it is improper for a reviewing court to reach the merits. *Id*. Defendant did not raise this issue below, and it is unpreserved.

The standard of review for an unpreserved constitutional issue is for plain error affecting defendant's substantial rights. *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015).[6] This standard is met only if there has been a clear or obvious error that has affected the outcome of the proceedings below. *Id*.

Defendant argues that the search of his home was unreasonable because it was made without a warrant and without his consent. The search and seizure was clearly reasonable because it was by consent of a person with common authority over the property. *People v Brown*, 279 Mich App 116, 131; 755 NW2d 664 (2008), lv den 485 Mich 1073 (2010), cert den sub nom *Brown v Michigan*, 562 US 842; 131 S Ct 77; 178 L Ed 2d 50 (2010).

### D. DENIAL OF MIRANDA RIGHTS

Defendant next claims in his Standard 4 brief that his rights were not read to him, but he provides no legal analysis and fails to argue that any evidence used at trial was obtained from him during a custodial interrogation. This claim is abandoned. *People v Kent*, 194 Mich App 206, 210; 486 NW2d 110 (1992).

---

[6] The defendant's leave to appeal this decision to the Supreme Court of Michigan is being held in abeyance pending the Supreme Court's decision in *People v Temelkoski*. See *People v Bosca*, 872 NW2d 492 (Mich 2015).

## E. ARRAIGNMENT

Next, defendant claims that he requested a lawyer before arraignment, but the district court judge ignored him and entered a not guilty plea on his behalf. Defendant is not entitled to relief on this claim because he was not entitled to an attorney at this arraignment. *People v Green*, 260 Mich App 392, 399; 677 NW2d 363 (2004), overruled in part on other grounds *People v Anstey*, 476 Mich 436; 719 NW2d 579 (2006).

In this case, as in *Green*, "nothing in the record indicates that the arraignment was a critical stage of the proceedings . . . during which the absence of counsel . . . denied defendant a fair trial." *Id*. at 400. Defendant did not submit a transcript of his district court arraignment, and it does not appear in the record sent to this Court. More importantly, he does not argue that any of his rights were affected in any way by the absence of counsel at his arraignment or offer any explanation regarding how this denied him a fair trial. There is no indication of plain error concerning this issue or that any of defendant's rights were sacrificed or any defenses waived. Rather, it appears that the district court advised defendant that he was entitled to be represented by counsel at all subsequent proceedings, as required by MCR 6.104(3), and the record shows that he was. Defendant has failed to show error warranting relief.

## F. PROSECUTORIAL MISCONDUCT

Next, defendant raises several claims of misconduct by the prosecutor in his Standard 4 brief. Because defendant failed to object to any alleged prosecutorial impropriety, the issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Unpreserved allegations of prosecutorial misconduct are reviewed for plain error. *Id.*

Defendant claims that the prosecuting attorney coached witnesses on what to say and how to dress and asked leading questions at the preliminary examination and at trial. These claims are meritless because there is no factual basis whatsoever for defendant's allegations. Moreover, the challenged questioning occurred at a preliminary examination, which is not constitutionally required, so any errors were harmless because defendant was subsequently convicted at an otherwise fair trial. *People v Johnson*, 315 Mich App 163, 200 n 7; 889 NW2d 513 (2016). Defendant is not entitled to relief.

Defendant alleges that the prosecuting attorney coached the victim and her friend regarding what they would say and how they should dress. The record establishes only that the victim changed her hair color from red to black and that the prosecuting attorney told her to dress comfortably for trial. There is no factual basis for defendant's claim that the prosecutor improperly coached the victim in what to say or how to dress.

Defendant also complains that the prosecutor was "leading on" the witnesses—specifically that the prosecutor asked the friend who informed a school counselor that CK had disclosed that her stepfather was sexually abusing her, how the witness was feeling and how CK was feeling and acting. The friend stated that she felt uncomfortable during the disclosure and that CK was very nervous and did not make eye contact with her. Simply, this testimony does not establish that the prosecuting attorney improperly coached witnesses or led them to testify in

any particular way. Defendant has not established plain error or that his trial was unfair in any way.

## G EXCESSIVE BAIL

Defendant next claims that the district court violated his Eighth Amendment right by setting his bond at $500,000. Defendant raises this issue for the first time on appeal, and it is moot.

Both the United States Constitution and the Michigan Constitution provide a "fundamental constitutional right to reasonable bail." *Citizens for Pretrial Justice v Goldfarb*, 415 Mich 255, 280; 327 NW2d 910 (1982), RYAN, J, concurring in part and dissenting in part, citing US Const, Am VIII; Const 1963, art 1, § 16. However, "the right to bail pending trial is a right that must be defended immediately if it is to be protected at all." *Atkins v Michigan*, 644 F 2d 543, 550 (CA 6, 1981). Claims regarding pretrial bail are rendered moot by a defendant's conviction. *Murphy v Hunt*, 455 US 478, 481-482; 102 S Ct 1181; 71 L Ed 2d 353 (1982) (holding Eighth Amendment claim regarding bail was moot because the defendant no longer had a cognizable interest in the result of the case once convicted). Because defendant was convicted, he has no legally cognizable interest in this issue. The issue of excessive bail is moot.

## H. DISTRICT COURT BIAS

Defendant next claims in his Standard 4 brief that the district court judge made remarks that personally attacked him at the preliminary examination, showing she was biased. A claim of judicial bias can be preserved through filing of a motion to disqualify the judge pursuant to MCR 2.003(C)(1). Because defendant did not preserve this claim by filing such a motion or otherwise raising it either in the district court or in the circuit court, this Court's review is for plain error affecting substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

Defendant argues that the district court exhibited bias against him during the preliminary examination by personally attacking him. Defendant has failed to establish this claim.

"A criminal defendant is entitled to a 'neutral and detached magistrate.' " *Jackson*, 292 Mich App at 597-598 (citation omitted). A neutral judge takes care not to indicate his or her own opinion, either directly or indirectly, so as not to influence the jury's opinion of a witness. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Id.* at 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. Additionally, a judge's bias must be both personal and extrajudicial in order to warrant disqualification. *Cain v Dep't of Corrections*, 451 Mich 470, 495; 548 NW2d 210 (1996). Therefore, an opinion that a judge may form during trial is not a valid ground for alleging bias unless the judge also exhibits deep-seated favoritism or antagonism sufficient to render impossible the exercise of fair judgment. *Johnson*, 315 Mich App at 196. There exists a heavy presumption that a judge has been impartial. *Id*.

Defendant argues that a statement made by the district court judge at the end of the preliminary examination showed bias because it was a personal attack on him. He cites to the following exchange that took place between defendant and the district court judge:

> *Court*. And I should say that the complainant [CK] is probably one of the most credible witnesses for her age that this Court has ever heard testify. Not only was her testimony credible, but at this point it's not contradicted. So to Robert Michael Avendt, I'll say that on a probable cause standard it has been established . . . now you look at me when I'm talking to you."

> *Defendant*. Yes, your Honor.

> *Court*. It has been established that you are a rapist and a pedophile and I want you out of this room in 15 seconds. Deputy, go. Matter is bound over as charged to the Oakland County Circuit Court.

These statements indicate that the judge formed an opinion during the proceedings that the complainant was credible and that defendant was likely guilty because the victim's testimony was uncontroverted at that time; therefore, these statements do not establish that the court pierced the veil of judicial impartiality. *Johnson*, 315 Mich App at 196. Moreover, the statements could not possibly have violated defendant's right to a fair trial. Because these comments were made at the preliminary examination, where there was no jury to be swayed by the court's opinion, the court could not have improperly influenced defendant's jury. Even if the comments showed strong personal bias, this error is harmless because it occurred at a preliminary procedure and defendant was "subsequently convicted at an otherwise fair trial." *Johnson*, 315 Mich App at 200 n 7. Defendant was not deprived of a fair trial by judicial bias.

## I. PHYSICAL EVIDENCE

Finally, defendant claims that certain physical evidence should not have been seen by the jury because the mattress cover tested negative for semen, and the carpet was not relevant when the testimony said the sexual assault took place on the bed. This claim fails.

In addition to documentary evidence such as medical records and reports, two pieces of evidence were introduced at trial—a piece of carpet and a mattress cover. Both were collected by a crime scene specialist with the Oakland County Forensic Science laboratory, who searched CK's room for evidence. He collected these two items because he saw a stain on the mattress cover, which fluoresced under his ultraviolet light, and he found another spot with the ultraviolet light on the floor approximately two feet from the bed. He cut the piece of carpet around the stain and sent that and the mattress cover for testing.

This evidence was admitted without objection. There is no indication in the record of where the exhibits were located while the expert was testifying about them. On defendant's referenced transcript pages and some following pages, an expert witness in forensic biology testified regarding the mattress cover and the carpet sample. She explained how she tested the mattress cover, and that it was negative for semen, but indicated the possible presence of blood. She also testified that she tested a four and a half inch by four and a half inch carpet sample and identified sperm cells, which indicates the presence of semen.

Defendant's argument seems to be that this evidence was improperly admitted because it was irrelevant and prejudicial. Evidence is admissible if it is relevant, MRE 401, and its probative value is not "substantially outweighed by the danger of unfair prejudice" under MRE 403. *People v Ackerman*, 257 Mich App 434, 439-440; 669 NW2d 818 (2003). The semen found on the carpet and the spot on the mattress were related to a fact of consequence to the complainant's allegations—whether defendant sexually assaulted the complainant in her room, where this evidence was found. *Id.* Therefore, they were material. These items were also probative because they clearly tended to make it more probable that defendant sexually assaulted the complainant in her room. *Id.* This evidence is clearly prejudicial, as is all relevant evidence, but it is not unfairly so because its probative value is not marginal, but rather strong and the only physical evidence that corroborated the complainant's testimony. See *id.* at 442.

Defendant's argument that the evidence was not relevant because the testimony established that the sexual assault took place on the bed is untrue. CK testified that the assaults took place in different places, and CK's mother testified that she never had sex with defendant in the complainant's bedroom. The evidence was relevant and not unfairly prejudicial; therefore, it was admissible.

## V. CONCLUSION

Defendant was not denied a fair trial based on any of the errors he alleges, and he was not denied the effective assistance of counsel. None of defendant's other unpreserved issues in his Standard 4 brief warrant relief.

We affirm.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Michael J. Riordan

-14-